**TOWN OF GREEN RIVER v. FULLER BRUSH CO.**

**No. 761.**

Circuit Court of Appeals, Tenth Circuit.

May 11, 1933.

Mahlon E. Wilson, of Salt Lake City, Utah, and T. S. Taliaferro, Jr., and Arthur Lee Taliaferro, both of Rock Springs, Wyo., and Robert C. Wilson, of Salt Lake City, Utah, for appellant.

Samuel M. Lee and Ray E. Lee, both of Cheyenne, Wyo., for appellee.

Before LEWIS and PHILLIPS, Circuit Judges, and JOHNSON, District Judge.

LEWIS, Circuit Judge.

The decree in this case perpetually enjoined the Town of Green River, Wyoming, its officers and their successors, "from enforcing or attempting to enforce against said plaintiff, The Fuller Brush Company, the ordinance of said The Town of Green River, known as Ordinance No. 175, as same is set forth in full in the answer of said defendant herein."

The said ordinance is in these terms:

"Ordinance No. 175.

"Be It Ordained by the Town Council of the Town of Green River, Wyoming:

"Section 1. The practice of going in and upon private residences in the Town of Green River, Wyoming, by solicitors, peddlers, hawkers, itinerant merchants and transient vendors of merchandise, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences, for the purpose of soliciting orders for the sale of goods, wares and merchandise, and/or for the purpose of disposing of and/or peddling or hawking the same, is hereby declared to be a nuisance, and punishable as such nuisance as a misdemeanor.

"Section 2. The Town Marshal and Police Force of the Town of Green River are hereby required and directed to suppress the same, and to abate any such nuisance as is described in the first section of this ordinance.

"Section 3. Any person convicted of perpetrating a nuisance as described and prohibited in the first section of this ordinance, upon conviction thereof shall be fined in a sum not less than Twenty-five ($25.00) Dollars or more than One Hundred Dollars ($100.00), together with costs of proceedings, which said fine may be satisfied, if not paid in cash, by execution against the person of anyone convicted of committing the misdemeanor herein prohibited.

"Section 4. All ordinances and parts of ordinances in conflict with this ordinance are hereby repealed.

"Section 5. It being deemed by the Town Council of the Town of Green River that an emergency exists, this ordinance shall be in force and effect from and after its passage and approval.

"Passed this 16th day of November, 1931."

Appellee relying on the federal Constitution (Amendment 14; article 1, § 8) claims that the enforcement of the ordinance against its solicitors, representatives, and agents would deprive it of its property without due process of law, deny to it equal protection of law, and would interfere with interstate commerce. It further contends that the ordinance is not a valid exercise of the police power, but is an arbitrary and unreasonable attempt to exercise that power, and would be oppressive on appellee, and its enforcement without lawful right.

It is not doubted or questioned that the state has given the town by statute, according to the terms thereof, the power to declare what shall constitute a nuisance, to abate and prevent the same, and to inflict punishment on violators. Wyoming Comp. Stat. 1920, § 1754, 6th and 29th subdivisions, and section 7257.

When the bill came on for final hearing, the suit was submitted on a stipulation of facts, which are, insofar as material, these:

The matter in dispute exceeds $3,000, exclusive of interest and costs.

114

The Fuller Brush Company, a Delaware corporation, is engaged in the sale and distribution of goods, wares and merchandise to the public of the United States in general, having its principal place of business at Hartford, Connecticut. In carrying on its business of selling and distributing it has representatives, solicitors, and agents in various states of the United States who take orders for its goods, wares, and merchandise, and such orders are all forwarded to its office at Hartford or to various distributing stations throughout the United States to be accepted and filled, and the goods are shipped by common carrier for delivery. Shipments in fulfillment of orders obtained in Wyoming are interstate shipments.

The agents or solicitors of appellee go uninvited and against the wishes of the occupants of some of the dwellings in the town in and upon private premises and homes, and then and there solicit orders for appellee's goods, contrary to the express provisions of said ordinance.

When an agent of appellee goes to a residence to solicit orders for its goods he approaches in an orderly manner. When he reaches the house he rings the doorbell or knocks on the door. If the occupant of the house appears in response to the knock or ring, appellee's representative hands the occupant a card stating that he will call at some future time to redeem the card and present the occupant with a gift item with the compliments of appellee, and makes an appointment to call at a future time for an interview. If no one answers the knock or ring, appellee's agent leaves a card underneath the door or in some other secure place. Subsequently the representative calls again and knocks or rings and explains and demonstrates the use of appellee's goods and endeavors to obtain orders for goods like exhibited samples to be delivered at a future date. Orders taken are forwarded by the agent to appellee for acceptance, and if accepted the goods ordered are shipped for delivery. When received they are delivered to the customer in an orderly manner by the agent who took the order or some other representative of appellee, and the purchase price is collected and remitted to appellee.

The District Judge regarded the case as a close one, but reached the conclusion that the ordinance constituted an arbitrary and unreasonable regulation and entered the injunctive decree.

 It will be observed that the prohibitions and penalties named in the ordinance are directed against solicitors, peddlers, hawkers, itinerant merchants, and transient vendors of merchandise. Those named, except solicitors, have long been recognized as subject to regulation under the police power. Indeed, the power extends to the prohibition of such practices under penalty. Emert v. Missouri, 156 U. S. 296, 15 S. Ct. 367, 39 L. Ed. 430; Commonwealth v. Gardner, 133 Pa. 284, 19 A. 550, 7 L. R. A. 666, 19 Am. St. Rep. 645; Commonwealth v. Dunham, 191 Pa. 73, 43 A. 84; Williams v. Arkansas, 217 U. S. 79, 30 S. Ct. 493, 54 L. Ed. 673, 18 Ann. Cas. 865. But the ordinance here under consideration did not attempt to prohibit any of the parties named from selling their wares, either of goods carried with them or on samples for future delivery. It denounces a particular practice of such vendors or their agents. We must assume that the practice existed in the town as the first section states, and that it had become annoying and disturbing and objectionable to at least some of the citizens. We think like practices have become so general and common as to be of judicial knowledge, and that the frequent ringing of doorbells of private residences by itinerant vendors and solicitors is in fact a nuisance to the occupants of homes. It is not appellee and its solicitors and their methods alone that must be considered in determining the reasonableness of the ordinance, but many others as well who seek in the same way to dispose of their wares. One follows another until the ringing doorbells disturb the quietude of the home and become a constant annoyance. Another practice of the same sort has arisen within recent years of throwing advertisements at the entrance of homes. Men are employed for that purpose. Whole residence sections of cities and towns are at times flooded in this way to the annoyance of its citizens. Wettengel v. Denver, 20 Colo. 552, 39 P. 343. We think no distinction materially affecting the inquiry between solicitors and the others named in the ordinance can be found when its purpose and the annoyance which it was intended to prevent are borne in mind. We must therefore disagree with the learned District Judge in his conclusion that the ordinance was arbitrary and unreasonable.

 It has been uniformly held that while legislative authority may not arbitrarily interfere with private affairs by imposing unusual and unnecessary restrictions upon a lawful business, yet a considerable latitude of discretion must be accorded to the law making power, and if the regulation operates uniformly upon all persons similarly situated

and it is not shown that it is clearly unreasonable and arbitrary, it cannot be judicially declared to be in contravention of constitutional right. Kidd v. Pearson, 128 U. S. 1, 9 S. Ct. 6, 32 L. Ed. 346; Lawton v. Steele, 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385; Reinman v. Little Rock, 237 U. S. 171, 35 S. Ct. 511, 59 L. Ed. 900; Packer Corporation v. State of Utah, 285 U. S. 105, 52 S. Ct. 273, 76 L. Ed. 643, 79 A. L. R. 546. In Schmidinger v. Chicago, 226 U. S. 578, 33 S. Ct. 182, 184, 57 L. Ed. 364, the court said:

"This court has frequently affirmed that the local authorities intrusted with the regulation of such matters, and not the courts, are primarily the judges of the necessities of local situations calling for such legislation, and the courts may only interfere with laws or ordinances passed in pursuance of the police power where they are so arbitrary as to be palpably and unmistakably in excess of any reasonable exercise of the authority conferred."

We therefore conclude that the ordinance is an appropriate exercise of the police power.

We are also of opinion that the ordinance and its enforcement would not encroach directly or indirectly on appellee's constitutional rights, nor interfere with interstate commerce. It does not purport to interfere in any respect with appellee's right or privilege of selling and transporting its wares in interstate commerce. It is free to carry on a business of that sort except to solicit orders in the manner specified in the ordinance, and obviously it could do so in many ways other than imposing itself upon and disturbing the residents of the town as prohibited by the ordinance. Public notice of the presence of its agents in the town for the purpose of taking orders for appellee's goods could be given stating when and where such agents could be found, samples of its wares seen, and their use explained and demonstrated, and orders taken. In Packer Corporation v. State of Utah, supra, it is said (page 110 of 285 U. S., 52 S. Ct. 273, 274):

"It is a reasonable ground of classification that the state has power to legislate with respect to persons in certain situations and not with respect to those in a different one. Compare Williams v. Walsh, 222 U. S. 415, 420, 32 S. Ct. 137, 56 L. Ed. 253."

As in Murphy v. California, 225 U. S. 624, 32 S. Ct. 697, 56 L. Ed. 1229, 41 L. R. A. (N. S.) 153, this ordinance is not aimed at the solicitation of orders for purchases of appellee's goods, but at the "place" of solicitation. It did not prohibit the former, but only the latter. See, also, Williams v. Arkansas, 217 U. S. 79, 30 S. Ct. 493, 54 L. Ed. 673, 18 Ann. Cas. 865, and In re Barmore, 174 Cal. 286, 163 P. 50, L. R. A. 1917D, 688.

As to interstate commerce—in New York, N. H. & H. R. Co. v. New York, 165 U. S. 628, 17 S. Ct. 418, 420, 41 L. Ed. 853, the court had under consideration an attack on a statute of New York regulating the heating of steam passenger cars and for other purposes. The court said:

"The statute in question had for its object to protect all persons traveling in the state of New York on passenger cars moved by the agency of steam against the perils attending a particular mode of heating such cars. There may be reason to doubt the efficacy of regulations of that kind. But that was a matter for the state to determine. We know from the face of the statute that it has a real, substantial relation to an object as to which the state is competent to legislate, namely, the personal security of those who are passengers on cars used within its limits."

The court further held that the regulation might also be applied to interstate cars while within the state until Congress by legislation should act upon the subject. In Hennington v. Georgia, 163 U. S. 299, 16 S. Ct. 1086, 41 L. Ed. 166, a state statute forbidding the running of freight trains on any railroad in the state on Sunday was challenged as invalid. It was sustained as a police regulation under the state's power and could only be displaced when Congress exercised its constitutional power over the subject as one of interstate commerce. In Sligh v. Kirkwood, 237 U. S. 52, 35 S. Ct. 501, 503, 59 L. Ed. 835, a statute of Florida made it unlawful to sell, offer for sale, ship or deliver for shipment any citrus fruits which are immature or otherwise unfit for consumption. It was challenged as an interference with interstate commerce. The court said:

"Nor does it make any difference that such regulations incidentally affect interstate commerce, when the object of the regulation is not to that end, but is a legitimate attempt to protect the people of the state. * * *

"So it may be taken as established that the mere fact that interstate commerce is indirectly affected will not prevent the state from exercising its police power, at least until Congress, in the exercise of its supreme authority, regulates the subject. Furthermore, this regulation cannot be declared invalid if within the range of the police power, unless it can be said that it has no reasonable relation to a legitimate purpose to be accom-

plished in its enactment; and whether such regulation is necessary in the public interest is primarily within the determination of the legislature, assuming the subject to be a proper matter of state regulation."

Furthermore, we think this suit is not maintainable. Equity is without jurisdiction where there is full, complete and adequate remedy at law. There is an exception where rights of property are in danger, but appellee and its agents had no property right in doing the things that the ordinance prohibits, and all of the issues that it raises in the bill could have been asserted as defenses in a prosecution for violating the ordinance. In Boynton v. Fox West Coast Theatres Corporation, 60 F.(2d) 851, 854, we said:

"It is a general rule that a court of equity will not interfere to prevent the enforcement of a criminal statute even though unconstitutional. [Citing cases.] An exception to this general rule exists when the prevention of a threatened prosecution under an alleged unconstitutional enactment 'is essential to the safeguarding of rights of property, and when the circumstances are exceptional and the danger of irreparable loss is both great and immediate.'" (Citing cases.)

We add to the cases cited, Cave v. Rudolph, 53 App. D. C. 12, 287 F. 989. The act of strangers in going upon private property uninvited and ringing doorbells is not in our judgment a property right. We therefore are of opinion the decree granting the writ should be reversed and the bill dismissed.